IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

GARY STALLINGS,                )
                               )
        Plaintiff,             )
                               )
v.                             ) CIVIL ACTION NO. 97-JEO-2528-M
                               )
BAPTIST MEDICAL CENTER         )
CHEROKEE,                      )
                               )
        Defendant.             )

**MEMORANDUM OF OPINION**

Plaintiff Gary Stallings ("Stallings") has filed this action, asserting that Defendant Baptist Medical Center Cherokee ("Baptist") improperly terminated him. Specifically, Stallings asserts that Baptist terminated him in violation of the Family and Medical Leave Act of 1993 ("FMLA"). *See* 29 U.S.C. § 2601, *et seq.* He further alleges that Baptist breached its employment contract with him. Baptist has filed a motion for summary judgment on both claims. (Doc. 23).[1] Upon consideration of the record and the arguments of counsel, the court finds that the motion is due to be denied.

**I. FACTS**

Stallings is a forty-seven (47) year old man with an eighth grade education that worked for Baptist for approximately twenty-one years in the Environmental Services Department. Baptist has an employee handbook that all the employees acknowledge receipt of when it is

---

[1] References herein to "Doc. __" are to the document number assigned by the Clerk of the Court to the various pleadings and orders entered in this case.

provided to them. (Hearing Tr., pp. 53-54).[2] Stallings signed an acknowledgment form on December 15, 1990, showing his receipt of the handbook then in use. The acknowledgment provides that the recipient "understand[s] that The Baptist Medical Centers is an Employment-At-Will organization as defined in the Employment Relationship Statement and understand[s] that both The Baptist Medical Centers and [the recipient] are free to terminate this relationship at any time with or without cause." (*Id.*, Ex. 6). The handbook was revised in March 1994 and provides:

> Baptist Health System complies with the requirements of the Family and Medical Leave Act of 1993 (FMLA). A Family and Medical leave of absence without pay, not to exceed thirteen (13) weeks will be granted in accordance with the Family and Medical Leave Act of 1993. Employees who meet the requirements will be granted leave for 1) birth or placement for adoption or foster care of a child; 2) because of the serious health condition of a spouse, child, or parent, or 3) because of the employee's own serious health condition. To be eligible for this leave, an employee will have to have worked 1250 hours in the twelve month period prior to the requested leave. All [Earned Time Off] ETO and [Personal Illness Bank] PIB [leave] accrued at the time family and medical leave commences will be credited against this leave. The leave is not in addition to ETO and PIB. Employees will be guaranteed a return to the same or an equivalent position in pay, benefits and other terms and conditions of employment upon completion of this leave as defined by the Act. Employees will have to provide physician certification to be eligible for leave. For detailed information, contact your Human Resources Department.

(Stallings Depo., Ex. 7, p. 21;[3] McMichen Depo., p. 41[4]).

Stallings was diagnosed with "major depression" by Dr. Rita Stone on May 2, 1996. (McMichen Depo., p. 41). She recommended a leave of absence from the hospital. (*Id*).

---

[2] The references herein to "Hearing Tr." are to the unemployment compensation hearing transcript found at document 24, tab C.

[3] The references herein to "Stallings Depo." are to document 24, tab A.

[4] References herein to "McMichen Depo." are to document 24, tab B.

Stallings submitted a leave of absence request for FMLA leave commencing May 7, 1996. (*Id.*, Ex. 4). It listed an anticipated return date of July 31, 1996. (*Id*). The form also stated that Stallings understood that he "must contact [his] department head two (2) weeks prior to returning from leave of absence and submit a physician's release upon return to work." (Id).

On July 19, 1996, approximately two weeks before Stallings was to return to work, Baptist's Human Resource Director, Diane McMichen sent Stallings a letter concerning his return to work. She wrote:

> As you know July 31, if [sic] fast approaching. I hope you are doing fine and ready to return to work.
>
> I just wanted to remind you or let you know that you will need to bring a return to work certificate from your doctor before coming in on August 1.
>
> If you should have any questions please call me at . . . , if I should not be in please leave a message.

(McMichen Depo., Ex. 6). Stallings received the letter sometime after July 19 and after he had talked with his supervisor, Janet Fletcher. (Hearing Tr., p. 15). When he talked with Fletcher, she asked him if he was ready to come back to work. Stallings told her that he was ready, but the doctor that he wanted to see was not able to see him for two weeks. (*Id.*, p. 16). Fletcher then told him that "when [he got] his doctor's slip, then come on back to work."[5] (*Id.*, p. 17). McMichen was aware that Fletcher and Stallings had talked. According to McMichen, Stallings "did not indicate to [Fletcher] that he [Stallings] was having any problems at that time." (*Id.*, pp. 57-58).

During Stallings' FMLA leave, Dr. Sloan left the local area and Stallings was no longer

---

[5] Fletcher testified at the hearing that she did not tell him this. (Hearing Tr., p. 95).

3

able to use her as his doctor. (*Id.*, p. 8). As she was not available to provide him with the necessary certification to return to work. Stallings made an appointment before August 1, 1996, to see another doctor, Dr. Leach. However, Stallings canceled the appointment because he did not like Dr. Leach and did not have "trust in him." (*Id.*, p. 24). Stallings acknowledges that he felt that he was able to return to work on August 1. (*Id.*, p. 42). The only thing that he lacked on August 1 was the doctor's certification. (*Id.*).

Stallings did not return to work on August 1. McMichen called Stallings on August 5. She asked him if he was coming back to work. He told her he was going to return as soon as he obtained his doctor's certification. (*Id.*, p. 21). She asked him, during their telephone conversation, to come to her office the next day.

Stallings went to McMichen's office on August 6, 1996. McMichen told him that she and Fletcher had "talked it over and [they] decided to terminate [him]." (*Id.*, p. 22). Stallings had thirty-one (31) days of earned leave available when he was terminated. Baptist had various leave alternatives available for Stallings when he left.[6] He did not request consideration under any of them. (Hearing Tr., pp. 44-45).

Stallings went to see Dr. David Shewell on August 7, 1996. Shewell certified on that date that Stallings would be able to return to work on August 12, 1996. (McMichen Depo., Ex. 7).

Stallings sought unemployment compensation benefits from the State of Alabama following his termination. His claim was denied by the Alabama Department of Industrial

---

[6] Baptist's leave policy included leaves of absence for educational, health, or personal reasons. (McMichen Depo , Ex. 32, p. 21).

4

Relations. On May 21, 1997, a *de novo* trial of the denial of his unemployment claim was conducted by Cherokee County Circuit Court Judge David A. Rains. It was the only claim presented to Judge Rains. An order awarding Stallings unemployment compensation benefits from August 6, 1996 was entered on August 1, 1997. (Doc. 24, Ex. D).

Stallings filed the present action in Cherokee County Circuit Court on August 22, 1997, asserting a FMLA claim. It was removed to this court on September 22, 1997. Stallings amended the complaint on March 17, 1998, asserting that Baptist breached the employment contract as specified in the employee handbook.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of

some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see Fed. R. Civ. P.* 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 643 (11th Cir.

1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## III. DISCUSSION

Baptist asserts that *res judicata* bars Stallings from presenting the claims before this court. It further asserts that it complied with the requirements of the FMLA and Stallings was an employee-at-will entitled to no relief on the contract claim. Stallings asserts that *res judicata* does not apply and that there are factual issues that preclude summary judgment on the substantive claims.

## A. *Res Judicata*

The parties agree that the applicable standard is found in *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990):

> Federal courts apply the law of the state in which they sit with respect to the doctrine of *res judicata*. *Id*. Under Alabama law, the essential elements of *res judicata* are: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Hughes v. Allenstein*, 514 So. 2d 858 (Ala. 1987) (citing *Wheeler v. First Alabama Bank of Birmingham*, 364 So. 2d 1190, 1199 (Ala. 1978)). If all of these elements are met, any claim that was or could have been adjudicated in the previous action is precluded. *Id*. If even one element of the four is not met, however, *res judicata* is not applicable. *Fisher v. Space of Pensacola, Inc.*, 461 So. 2d 790, 792 (Ala. 1984).

### 1. Prior Judgment on the Merits

Stallings presented his claim for unemployment compensation benefits to the Circuit Court. Baptist correctly notes that the appeal was *de novo*. *See* Ala. Code § 25-4-95 (1998 Cum. Supp.). The state court found that Stallings was entitled to unemployment compensation benefits commencing August 6, 1996. There was no further appeal. The decision of the Circuit Court was a judgment on the merits.

### 2. Court of Competent Jurisdiction

The Circuit Court is a court of competent jurisdiction to hear *de novo* appeals of the denial of unemployment compensation claims such as the one presented by Stallings. It is also a court of competent jurisdiction to hear FMLA and breach of contract claims. *See* 29 U.S.C. § 2617(k). In fact, Stallings initially presented his FMLA claim in that court.

Stallings asserts that if he had tried to raise his FMLA and breach of contract claims during the appeal of the denial of unemployment benefits, that portion of the case would have

8

been dismissed. In support of this assertion, he cites *Turner v. Mobile County Personnel Board*, 689 So. 2d 168 (Ala. Civ. App. 1997) and *Ex parte Boyette*, 728 So. 2d 644 (Ala. 1998).

In *Turner*, a terminated police officer with the City of Mobile appealed interlocutory discovery orders entered by a county personnel board to the circuit court and therein also alleged equal treatment and due process violations concerning his termination. The lower court dismissed his appeal and he sought review in the Alabama Court of Civil Appeals. Citing *Ex parte Averyt*, 487 So. 2d 912 (Ala. 1986), the court held that the circuit court's consideration of the constitutional issues was barred as its jurisdiction is limited to a consideration of issues properly raised and made of record before the Board, and those do not include constitutional issues. A review of the constitutional questions could only be had by invoking in a collateral suit the general jurisdiction of the circuit court, as opposed to the appellate jurisdiction of the court. *Turner*, 689 So. 2d at 169-70.

In *Boyette*, a terminated juvenile probation officer appealed the decision of the Jefferson County Personnel Board to the circuit court. That court affirmed the decision, "finding that 'there was substantial and legal evidence to support the Board's decision. . . .'" *Ex parte Boyette*, 728 So. 2d 639, 641 (Ala. Civ. App. 1998), *reversed and remanded Ex parte Boyette*, 728 So. 2d 644 (Ala. 1998). After the circuit court was affirmed on appeal, *Boyette* filed a civil action asserting various claims, including a claim under the Age Discrimination in Employment Act (ADEA) and naming various individuals and Jefferson County as defendants. The circuit court entered summary judgment on the ADEA claim, finding that the employee could have raised this claim before the board or on review as a defense to the termination.

The issue in the second appeal was whether the trial court erred in entering summary

judgment on the ADEA claim. The Court of Civil Appeals held that the employee had waived his right to litigate the ADEA claim since he did not raise it before the Board, the Circuit Court, or in the first appeal. Applying *Averyt*, the Alabama Supreme Court reversed and remanded the case, finding that the ADEA claim could not be raised in the appeal to the circuit court as it was governed by § 22 of Act No. 248, 1945 Ala. Acts p. 376, as amended by Act No. 679, 1977 Ala. Acts p. 1176, which did not grant the circuit court the broad power to provide relief authorized under other statutes. *Boyette*, 728 So. 2d at 648.

What distinguishes *Averyt*, *Turner*, and *Boyette* from the present case is that the appeal to the circuit court in this case is *de novo*. The defendant correctly points this out. The Circuit Court of Cherokee County was not limited as were these courts in what it could consider on the appeal of the denial of relief. Nothing prevented the parties from presenting all the evidence from the administrative hearing on the unemployment compensation claim, as well as any additional evidence. However, the parties would still be invoking the court's appellate jurisdiction under *Code of Alabama* §§ 12-11-30(3) and 25-4-95. The FMLA and contract claims would be presentable only under the general jurisdiction of the court pursuant to *Code of Alabama* § 12-11-30(1).

Although *Averyt*, *Turner*, and *Boyette* are distinguishable and not controlling, the court is convinced that under the reasoning expressed by the state appellate courts, Alabama law would not hold that the Cherokee County Circuit Court at the time of the review of the compensation appeal was a court of competent jurisdiction for *res judicata* purposes on the FMLA and contract claims. Accordingly, the undersigned finds that the defendant has not satisfied this element so as to bar the present claims.

### 3. Substantial Identity of the Parties

"Substantial identity of parties exists when *res judicata* is asserted against a party, or against one in privity with a party, to the prior action. *NAACP*, 891 F.2d 1555; *Dairyland [Ins. Co. v. Jackson]*, 566 So. 2d 723 [(Ala. 1990)]." *Baker v. City of Guntersville,* 600 So. 2d 280, 282 (Ala. 1992). In the present case, *res judicata* is asserted against Stallings by Baptist. Both parties to this action were parties in the prior action, and, therefore, there is substantial identity of the parties.

To the extent that Stallings asserts, without authority, that Baptist was not a party in the prior action, the court finds otherwise. In *Hughes v. Martin,* 533 So. 2d 188 (Ala. 1988), the Alabama Supreme Court stated:

> The term "privity" has not been uniformly defined with respect to *res judicata*. The following three definitions have appeared in Alabama cases: (1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; and (3) an identity of interest in the subject matter of litigation. Largely defining privity by example, the Alabama cases seem to resolve the question on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment. The decision usually turns on whether the relationship between the parties was close enough and whether adequate notice of the action was received by the alleged privy; this test has been bolstered by the recent tendency of the Alabama courts to analyze privity as an identity of interests.

*Hughes*, 533 So. 2d at 191, *citing "Issue preclusion in Alabama,"* 32 Ala. L. Rev. 500, 520-21 (1981).

The official transcript and Judge Rains' order specifically state that Baptist was a defendant in the prior matter. (Doc. 24, Ex. C and D). Counsel for Baptist was present and cross-examined Stallings' witnesses, presented Janet Fletcher as a witness, and made objections and arguments to the court. Further, Judge Rains states in his order:

11

> This suit is brought by the Plaintiff, Gary Stallings (Employee) against Baptist Medical Center-Cherokee (Employer) on appeal from denial of unemployment compensation benefits by the Alabama Department of Industrial Relations (Department). The Employer and the Department contend that the Employee is ineligible for such benefits as a consequence of having voluntarily left his employment without good cause connected with such work. Title 25-4-78(2) Code of Alabama (1975).

(Doc. 24, Ex. D, p.1). The court held that Stallings was entitled to an award of unemployment compensation and the defendants were to calculate and pay the benefits to which he was entitled under the court's order. (*Id.*, p. 6).

Premised on this evidence, the court finds that Baptist was a party to the prior action. Further, *assuming arguendo*, that Baptist was not a party, it was in privity with the Alabama Department of Industrial Relations under the circumstances. *See McNeely v. Spry Funeral Home of Athens, Inc.*, 724 So. 2d 534, 538 (Ala. Civ. App. 1998)(a party asserting *res judicata* need only be in privity with a party to the former action).

### 4. Same Cause of Action Presented in Both Suits

The remaining issue concerning the applicability of *res judicata* is "whether the cause of action is the same in both the original action and the present action. The determination is whether the issues in the two suits are the same and whether the same evidence would support a recovery in both suits." *Dominex, Inc. v. Key*, 456 So. 2d 1047, 1054 (Ala. 1984). In *Thomas v. Lynn*, 620 So. 2d 615, 616 (Ala. 1993), the court stated:

> Regardless of the *form* of the action, the issue is the same when it is supported in both actions by substantially the same evidence. If it be so supported, a judgment in one action is conclusive upon the same issue in any suit, even if the cause of action is different. *Garris* [*v. South Alabama Production Credit Ass'n*], 537 So. 2d 914 [(Ala. 1989)](emphasis supplied).

"[A] prior judgment bars subsequent litigation of all issues falling within the scope of the

original action, including those issues that could have been litigated by exercising due diligence." *Turner v. Letica Corp.*, 669 So. 2d 901, 902 (Ala. Civ. App. 1994), *citing Sullivan v. Walther Builders, Inc.*, 495 So. 2d 655 (Ala. 1986).

In *Baker v. City of Guntersville*, 600 So. 2d 280 (Ala. Civ. App. 1992), the Court stated:

> The last element of res judicata requires that the same cause of action is presented in both actions. The principal test to determine if the same cause of action exists is whether the primary right and duty or wrong are the same in each action. *NAACP*, 891 F.2d 1555. *Res judicata* applies to "all legal theories and claims arising out of the same nucleus of operative fact." *Id.* at 1561. In other words, if the issues are the same and the same evidence would support a recovery in both suits, the same cause of action exists. *Garris v. South Alabama Production Credit Ass'n*, 537 So. 2d 911 (Ala. 1989). The issue is the same when it is supported by substantially the same evidence in both actions. *Id.*

*Baker*, 600 So. 2d at 282.

Just recently, in *Equity Resources Management, Inc. v. Vinson*, 723 So. 2d 634 (Ala. 1998), the court was presented with the question of when a consecutive action by the same plaintiff against the same defendant is barred by the doctrine of *res judicata*. The court held that the applicable rule could be summarized as follows:

> The application of the doctrine of *res judicata* to identical causes of action is not dependent on the identity or differences in the forms of the two actions, although such differences may be considered. If a claim, which arises out of a single wrongful act or dispute, is brought to a final conclusion on the merits, then all other claims arising out of that same wrongful act or dispute are barred, even if those claims are based on different legal theories or seek a different form of damages, unless the evidence necessary to establish the elements of the alternative theories varies materially from the evidence necessary for a recovery in the first action. In taking this approach, this Court has adopted a test that in certain respects is similar to, but which is not the same as, the "same transaction" test, which is found in Restatement (Second) of Judgments and which is applied in the federal courts. . . .

*Equity Resources Management, Inc.*, 723 So. 2d at 638. *See Olmstead v. Amoco Oil Co.*, 725

F.2d 627, 632 (11th Cir. 1984)(*res judicata* applies "to all legal theories and claims arising out of the same nucleus of operative fact").

In both actions, Stallings contests the termination of his employment by Baptist. At the unemployment compensation trial, the issue was whether Stallings left Baptist voluntarily without good cause or whether Baptist improperly terminated him for failing to return for work on August 1, 1996, when his leave expired.[7] The issues presented in the present suit are whether Baptist improperly terminated Stallings, either under the provisions of the FMLA or the contractual rights, if any, he is entitled under the Baptist employee handbook. This court cannot conclude that the evidence necessary for recovery in the unemployment benefits trial would be vary materially from the evidence that would be adduced in the FMLA or contract claim alleged in the present action. The present claims clearly arise out of the same factual dispute that was the basis of the unemployment compensation action. But for the fact that the FMLA and contract claims were not within the appellate jurisdiction of the court during the review of the denial of unemployment compensation matter as discussed above, the present claims would be barred.

---

[7] Under Alabama law, an individual is disqualified from receiving unemployment benefits if he voluntarily quits without good cause. The pertinent provision provides:

> (2) VOLUNTARILY QUITTING WORK. -- If he has left his most recent bona fide work voluntarily without good cause connected with such work.
>
> a.1. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and:
>
> (i) The individual fails to comply with same as soon as it is reasonably practicable so to do; or
>
> (ii) Upon the expiration of a leave of absence shall fail to return to said employer and offer himself for work, if he shall then be able to work, or if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave of absence as soon as it is reasonably practicable so to do.

*Code of Alabama* § 25-4-78(2) (1998 Cum. Supp.).

### B. The FMLA Claim

Baptist next asserts that it acted in conformity with the FMLA in terminating Stallings at the end of the 12-week period provided by the Act. They therefore assert that his claim should be denied.

The FMLA allows an eligible employee up to twelve weeks of medical leave for a serious health condition if such a condition renders the employee unable to work. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4). Upon completion of the leave, the law also entitles the employee to be restored to the position held when the leave commenced, or to its equivalent. 29 U.S.C. § 2614(a)(1). The employer may condition return to work on a uniform policy that requires an employee to obtain a certification from the employee's health care provider demonstrating an ability to return to work. 29 U.S.C. § 2614(a)(4). The certification "need only be a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c). If the employee fails to provide the certification before the leave is concluded, the employer may terminate the employee. 29 C.F.R. § 825.311(c). Finally, the FMLA makes it unlawful for any employer to interfere with, restrain, or deny an employee any of these rights. 29 U.S.C. § 2615. If an employee believes his rights have been violated, the employee may bring a civil action to recover damages or to obtain equitable relief against the offending employer. 29 U.S.C. § 2617(a).

The parties' positions on the FMLA issue are clear. Stallings asserts that he did not return to work within the 12-week period because of his conversation with Ms. Fletcher and her purported statement that he was to come back to work when he got his medical certification.

15

(Doc. 34, ¶¶ 8-9). He is making a claim for relief premised on equitable estoppel.[8] Baptist asserts that it complied with the requirements of the FMLA, but Stallings did not. He failed to provide them with the requested certification and failed to timely return to work. Baptist contests the statement attributed to Fletcher.

Reviewing the summary judgment submissions in a light most favorable to Stallings, the court finds that there is a genuine issue of material fact precluding summary judgment. The issue as to what, if anything, Fletcher told Stallings is material and it is disputed. The resolution of Stallings' claim will turn in significant part on whether the trier of fact is willing to attribute the statement to Fletcher. Accordingly, Baptist is not entitled to summary judgment at this juncture.

### C. The Contract Claim

Recently, the Alabama Supreme Court discussed the effect of employee handbooks on the general rule that employment in Alabama is "at will." The court stated:

> The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party. Under this doctrine, an employee may be discharged for any reason, good or bad, or even for no reason at all. *See Bell v. South Central Bell*, 564 So. 2d 46 (Ala. 1990). While at-will employment is indeed the traditional model, Alabama has, in the relatively recent past, imposed certain limits on an employer's right to discharge an employee. Among those limitations is an exception, recognized by this Court, for implied contracts arising out of the use of an employee handbook. In *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725 (Ala. 1987), Alabama adopted the position, taken by a number of other jurisdictions, that the provisions of an employee handbook can become a binding unilateral contract, thereby altering an employment relationship's at-will status.

---

[8] The court in *Blankenship v. Buchanan General Hospital, Inc*, 999 F. Supp. 832, 837 (W.D. Va. 1998), applied equitable estoppel in the FMLA context. The court stated, "Equitable estoppel 'arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation.'" *Blankenship*, 999 F. Supp. at 837, citing *Bakery and Confectionery Union v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) (citing *Black v. TIC Inv Corp.*, 900 F.2d 112, 115 (7th Cir 1990)).

> Modeled on the leading case of *Pine River State Bank v. Mettille*, 333 N.W. 2d 622 (Minn. 1983), *Hoffman-La Roche* represented a departure from the at-will employment doctrine, but it also recognized that not all employer communications would justify such treatment. Rather, only those employer communications meeting the traditional requirements for the formation of a unilateral contract--an offer, communication, acceptance, and consideration--will bind the parties.

*Ex parte Amoco*, 729 So. 2d 336, 339 (Ala. 1998). "In the appropriate case, language contained in an employee handbook can be sufficient to create a binding contract." *Ex parte Graham*, 702 So. 2d 1215, 1218 (Ala. 1997).

> "'[T]o become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. . . . [I]f the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook. . . .
>
> "'. . . .
>
> "'. . . First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration.'

*Graham*, 702 So. 2d at 1218 (citing *Hoffman*, 512 So. 2d at 734-35).

Turning to the *Hoffman* considerations, this court finds as follows: Concerning the first element, an offer, the applicable language, "Baptist Health System complies with the requirements of the Family and Medical Leave Act of 1993 (FMLA). A Family and Medical leave of absence without pay, not to exceed thirteen (13) weeks will be granted in accordance with the Family and Medical Leave Act of 1993," is clear. (McMichen Depo., Ex. 23, p. 21). The provision informs the employee that he or she will be allowed thirteen weeks of leave. Baptist is not saying that the FMLA requires this, but asserts that Baptist will grant thirteen

17

weeks. The employee has a right under the circumstances to rely on the representation of Baptist in the handbook. The various provisions of the handbooks and the acknowledgments which state that the employment relationship is "at will," do not alter the specific language just quoted.[9]

Concerning the second element, the communication of the offer, the record is clear, and Baptist does not dispute (*See* McMichen Depo., p. 44), that the applicable handbook that was given to the employees specified the leave was for thirteen weeks. This constitutes a communication of the offer of thirteen weeks leave.

Concerning the third element, acceptance, the record is again clear. Stallings remained with Baptist after the revisions in 1994. That performance supplies the necessary consideration.

Whether Baptist complied with the agreement to afford Stallings thirteen weeks of leave is disputed. Genuine issues of material fact are evident. By way of example, the calculation of the period will vary depending on definition of the "thirteen weeks." It could mean 91 days or thirteen work weeks. Additionally, although the record demonstrates that the leave commenced on May 7, 1996, it is unclear whether Stallings worked that day, with the leave commencing at the end of this day or whether he did not work that day so that May 7 was the first day of the leave. Further, and most significant, premised on the purported statement by Fletcher, there is a factual dispute as to whether Stallings is entitled to any relief. It will be for the jury to decide

---

[9] The December 15, 1990 acknowledgment form Stallings executed following receipt of the handbook provides that the recipient "understand[s] that The Baptist Medical Centers is an Employment-At-Will organization as defined in the Employment Relationship Statement and understand[s] that both The Baptist Medical Centers and [the recipient] are free to terminate this relationship at any time with or without cause." (Stallings Depo, Ex. 6). The revised 1994 handbook that is applicable in the present matter states "that the employment relationship between the organization [Baptist] and any employee may be terminated by either party at any time, with or without cause." (McMichen Depo., Ex. 23, p. 7). The last page of the handbook, which is an acknowledgment of receipt of the book, contains the same statement as the 1990 acknowledgment that Baptist is an "at-will" organization and the relationship may be terminated by either Baptist or the employee at any time with or without cause. (McMichen Depo., Ex. 23, p. 25).

18

whether the statement attributed to Fletcher by Stalling was in fact made. Just as this prevented the granting of summary judgment on the FMLA claim, it prevents the granting of summary judgment on the contract claim.

## IV. CONCLUSION

Premised on the foregoing, the court finds that the motion for summary judgment filed by Baptist (doc. 23) is due to be denied. An appropriate order will be entered.

**DONE** this the ___7th___ day of December, 1999.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE